VERMONT SUPERIOR COURT
WASHINGTON UNIT
CIVIL DIVISION

2014 AUG 28  P 1: 06

| | |
|---|---|
| STATE OF VERMONT<br> Plaintiff<br><br>v.<br><br>MPHJ TECHNOLOGY INVESTMENTS,<br>LLC<br> Defendant | Docket No. 282-5-13 Wncv<br><br>RECEIVED<br>BURLINGTON, VT<br>SEP 17 2014<br>2:14-cv-192<br>CLERK'S OFFICE<br>U.S. DISTRICT COURT |

## RULING ON MOTION TO STAY, MOTION TO AMEND, and MOTION TO DISMISS

The State filed this consumer protection action in May of 2013. The complaint alleges

that MPHJ, a Delaware company, sent numerous unfair and deceptive letters to Vermont

businesses alleging patent infringement and threatening to sue if the businesses did not pay

licensing fees. The State alleges that the letters violate the Vermont Consumer Protection Act.

Defendant MPHJ promptly removed the case to federal court. That court found that it

lacked jurisdiction, and remanded the case back to this court in April of this year. There are

several motions pending that were not resolved by the federal court, as well as one filed since the

remand. [1]

---

[1] One of the motions still pending appears to be a Rule 11 motion for sanctions. However, the motion and response
are not included on the disc sent back to this court from federal court (perhaps because they were filed under seal?).
If MPHJ wishes to have the court consider the motion, MPHJ shall file copies of the motion and any responses and
replies by September 15. If nothing is filed, the motion will be considered withdrawn.

Motion to Stay

Defendant moved to stay this case pending resolution of its appeal in the Second Circuit. That court has now affirmed the remand of the case to this court. State of Vermont v. MPHJ Technology Investments, LLC, Nos. 2014–1481, 2014–137, 2014 WL 3938955 (2d Cir. Aug. 11, 2014). Thus, the motion to stay is denied as moot.

Motion to Amend

The State moved to clarify or amend the complaint. The court grants the motion to amend.

Motion to Dismiss

MPHJ seeks dismissal for lack of personal jurisdiction. The complaint alleges that MPHJ "did business in Vermont" through its wholly owned subsidiaries. First Amended Complaint, ¶ 7. Specifically, it alleges that MPHJ has sent "hundreds or thousands" of letters to businesses in Vermont alleging potential patent infringement, and seeking to sell licenses to the recipients. Id., ¶¶ 15-17. It alleges that often there are three letters in a row to a business, with the last letter threatening litigation. Id, ¶¶ 23-32.  The State further alleges that the letters contained false representations and false threats of litigation, were sent in bad faith, and constituted unfair and deceptive practices in violation of the Vermont Consumer Protection Act, 9 V.S.A. § 2453(a). MPHJ says this is insufficient to create personal jurisdiction.

There are two essential prongs to the inquiry here: whether the defendant has "minimum contacts" with the state, and whether it is fair and reasonable to subject it to suit in this jurisdiction. Some cases break this down, and some discuss the issues as part of a single inquiry. The overall question is whether "the defendant's conduct and connection with the forum state are such that [it] should reasonably anticipate being haled into court there." N. Aircraft, Inc. v. Reed,

154 Vt. 36, 41 (1990). "This reasonableness requirement is met when the defendant purposefully directs activity toward residents of a forum state and the litigation arises out of, or relates to, that activity. The reasonableness requirement also prevents a defendant from being subjected to jurisdiction on the basis of fortuitous, attenuated, or random contacts." Dall v. Kaylor, 163 Vt. 274, 276 (1995), (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472, 475 (1985); . N. Aircraft, Inc., 154 Vt. at 41).

Both parties agree that in this case the question is whether "specific jurisdiction" relating to MPHJ's conduct in Vermont exists, as opposed to "general jurisdiction" over MPHJ in a broader sense. See, e.g., Fox v. Fox, 2014 VT 100, ¶ 27. ("Nobody suggests that Vermont has general jurisdiction to adjudicate claims against defendant. Plaintiff introduced no evidence that defendant owned property in Vermont, did business in Vermont, visited Vermont, or had any contact with the State or its residents. The question in this case is whether Vermont has specific jurisdiction because the litigation arises from defendant's personally directing his activities toward Vermont.").

The "unifying feature" in cases finding specific jurisdiction is that "the defendant directed activity into the forum state, or toward its residents in that state." Fox, 2014 VT 100, ¶ 29. The key factor is "the intentional and affirmative action on the part of the non-resident defendant in pursuit of its corporate purposes within this jurisdiction." O'Brien v. Comstock Foods, Inc., 123 Vt. 461, 464 (1963). Physical presence in the state is, of course, not required:

> [I]t is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted. So long as a commercial actor's efforts are "purposefully directed" toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.

Burger King, 471 U.S. at 476. Moreover, "[a]s technology and economic practices diminish the importance of geographic boundaries, it is not unreasonable to anticipate the expansion of personal jurisdiction to those who deliberately transcend those boundaries in pursuit of economic gain." Dall, 163 Vt. at 277.

Our Supreme Court has noted in passing that letters and phone calls to Vermonters from out-of-state lawyers might not alone be sufficient to create personal jurisdiction over those lawyers. Schwartz v. Frankenhoff, 169 Vt. 287, 297 (1999). However, the court's analysis focused not on that issue, but on the lack of a valid legal claim against the lawyers. Id. at 297-99. Moreover, the case to which it cited addressed the issue of a non-resident merely *answering* a phone call, not initiating one. The court thus finds Frankenhoff of little help here.

Other courts have held that letters and phone calls were not alone sufficient to establish minimum contacts. *See, e.g.*, Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., K.G., 646 F.3d 589, 594 (8th Cir. 2011); Far West Capital Inc. v. Towne, 46 F.3d 1071, 1077 (10th Cir. 1995); Pharmabiodevice Consulting, LLC v. Evans, No. GJH–14–00732, 2014 WL 3741692 *4 (D. Md. July 28, 2014). Unlike this case, however, those cases did not involve allegations that it was the letters themselves that constituted the unlawful activity. Instead, the letters, calls or emails were merely the connection upon which the plaintiffs sought to bring *other* activities of the defendants into court. Here, the State alleges that the very act of sending the letters violated Vermont law. Other courts have distinguished such cases. *See, e.g.*, Couvillier v. Dillingham & Associates, No. 2:14–cv–00482–RCJ–NJK, 2014 WL 3666694 * 3 (D. Nev. July 23, 2014) (In case alleging violation of the Fair Debt Collection Practices Act, "[t]he mailing of the collection letter to Nevada was an intentional act expressly aimed at Nevada (allegedly) causing harm that

Dillingham knew or should have known would be felt in Nevada, and the present claims arise directly out of that act.").

As MPHJ points out, other courts have found that patent-related letters similar to those at issue here were insufficient to establish minimum contacts. *See, e.g.*, Invellop, LLC v. Bovino, No. 3:14–cv–00033–SI, 2014 WL 3478866 *4 (D. Or. July 11, 2014)("An alleged injury based only on the threat of infringement communicated in an 'infringement letter' is insufficient to establish personal jurisdiction."). The Bovino court noted that patent-holders have a right to inform others of suspected infringement, and concluded that it would not be fair to subject the patent-holder to litigation everywhere it sent such letters. Id. The case involved a plaintiff seeking a declaratory judgment that it had not infringed Defendant's patents, and a declaration that the patents were invalid. Again, that case is distinguishable from this one because here the claim is that *the letters themselves* constituted a violation of Vermont's consumer projection statute. The same is true of the cases cited by MPHJ. *See*, Avocent Hunstville Corp. v. Aten Int'l Co., 552 F. 3d 1324, 1326 (Fed. Cir. 2008); Hildebrand v. Steck Mfg. Co., 279 F. 3d 1351, 1353 (Fed. Cir. 2002); Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc., 148 F. 3d 1355, 1357 (Fed. Cir. 1998); Engineering & Inspection Services, LLC v. IntPar, LLC, No. 13–0801, 2013 WL 5589737 * 2 (E.D.La. Oct. 10, 2013)(in which MPHJ was a defendant).

This case is analytically similar to one involving text messages allegedly sent in violation of a consumer protection statute. Luna v. Shac, LLC, No. C14–00607 HRL, 2014 WL 3421514 (N.D.Cal. July 14, 2014). In Luna, the court held that "[w]hen Shac intentionally sent unsolicited text messages advertising Sapphire to California cell phone numbers, which conduct gave rise to this litigation, it purposefully directed its activity to California such that Shac is reasonably subject to the personal jurisdiction of this Court." Id. * 4. This is what the Supreme Court

addressed in Calder v. Jones, 465 U.S. 783 (1984), a libel suit in which it said that wrongful out-of-state conduct intentionally directed at in-state residents can be sufficient: "petitioners are primary participants in an alleged wrongdoing intentionally directed at a California resident, and jurisdiction over them is proper on that basis." Id. at 790. "An individual injured in California need not go to Florida to seek redress from persons who, though remaining in Florida, knowingly cause the injury in California." Id. Other states addressing alleged violations of the Telephone Consumer Protection Act have reached the same conclusion. Luna, 2014 WL 3421514  at * 4 (citing cases finding allegedly unlawful phone calls to be sufficient basis for jurisdiction).

Other courts have found that mailings that allegedly violated consumer protection laws created sufficient grounds for specific jurisdiction. See, e.g., State by Humphrey v. Granite Gate Resorts, Inc., 568 N.W.2d 715, 720 (Minn. Ct. App. 1997) ("Advertising contacts justify the exercise of personal jurisdiction where unlawful or misleading advertisements are the basis of the plaintiff's claims."), aff'd, 576 N.W. 2d 747 (Minn. 1998); State of Washington v. Reader's Digest Ass'n, 501 P. 2d 290, 302-03 (Wash. 1972)(mailings to residents of the state that violated state lottery laws created jurisdiction), mod. on other grounds by Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 719 P. 2d 531 (Wash. 1986). This court concludes that because the allegation here is that the letters themselves are violations of the law, purposefully directed at Vermont residents, they create sufficient minimum contacts for purposes of personal jurisdiction over MPHJ.

Even when sufficient "minimum contacts" exist, however, the court must consider whether it is fair to exercise jurisdiction. Burger King, 471 U.S. at 476.  Relevant factors may include "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's

interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." Id. at 477 (internal quotations and citations omitted). "These considerations sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required." Id.

The court finds a key factor here to be the fact that the case is brought by the State on behalf of the public, seeking to enforce our consumer protection law. The State has a special interest in protecting its citizens, which is categorically different from an individual business suing to protect solely its own interests. "We agree that the 'fairness' of haling respondent into a New Hampshire court depends to some extent on whether respondent's activities relating to New Hampshire are such as to give that State a legitimate interest in holding respondent answerable on a claim related to those activities." Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 775-76 (1984). The Supreme Court in Keeton noted that a state "may rightly employ its libel laws to discourage the deception of its citizens." Id. at 776. The same is true here: Vermont has a strong interest in protecting its citizens from consumer fraud.

Moreover, rejecting jurisdiction would be unfair to those alleged to have been subjected to the deceptive letters:

> To require a resident to commence his action in a foreign jurisdiction on a tort committed where he lives, and to transport his witnesses to such other state might well make protection of his right prohibitive and   in effect permit a foreign corporation to commit a tort away from its home with relative immunity from legal responsibility.

Smyth v. Twin State Imp. Corp., 116 Vt. 569, 575 (1951).

While MPHJ argues that it would be burdensome for it to defend litigation in Vermont, it fails to respond to the States' point that MPHJ's own letters to Vermont businesses threatened

litigation in Vermont. While that in itself does not establish jurisdiction here, it certainly undercuts MPHJ's claim that having to litigate in Vermont would be unreasonably burdensome. In addition, it would be more burdensome for the "hundreds or thousands" of recipients of the letters to provide evidence in Delaware than it would for MPHJ's witnesses, presumably a limited group,  to provide evidence here.

Finally, it is unlikely that another state's court would conclude that it had jurisdiction over the Vermont Consumer Protection Act claims asserted here. Thus, denying jurisdiction here might well mean denying any forum at all for the resolution of these claims.

In balancing the burdens on both sides here, the interest of the State in protecting its citizens weighs heavily in favor of jurisdiction.

<u>Order</u>

The motion to stay is denied. The motion to amend is granted. The motion to dismiss is denied. The motion for sanctions will be deemed withdrawn unless MPHJ submits copies of the motion, responses, and replies by September 15. As discussed at the status conference on May 22, discovery shall be completed by May 28, 2015. The parties are directed to submit a proposed discovery/pretrial order by September 15.


Dated at Montpelier this 28th day of August, 2014.


Helen M. Toor
Superior Court Judge

8